ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

\-------------------------------------------------------------

HYUNDAI MOTOR FINANCE COMPANY,

                              Plaintiff,

        - against -

FALCON MOTORS, INC., SAEID TEHRANI,
ARIEL TEHRANI, EDMOND GEULA AND
EXECUTIVE MOTORS, LTD.,

                              Defendants.

\-------------------------------------------------------------

Civil Action No. **08 CIV. 1262**

**JUDGE KARAS**

## VERIFIED COMPLAINT FOR REPLEVIN AND MONEY DAMAGES

Plaintiff, Hyundai Motor Finance Company (hereinafter "HMFC"), by and through its

counsel, Deily, Mooney & Glastetter, LLP, as and for its Complaint against Defendants, Falcon

Motors, Inc.,  Saeid Tehrani, Ariel Tehrani, Edmond Geula and Executive Motors, Ltd.

(collectively hereinafter "Defendants") hereby alleges as follows:

### PARTIES

1.      HMFC is a company duly organized, chartered and existing under and by virtue

of the laws of the State of California, maintaining offices and its principal place of business at

10550 Talbert Avenue, P.O. Box 20809, Fountain Valley, California 92728-0809.

2.      Upon information and belief, Defendant Falcon Motors, Inc. (hereinafter

"Falcon") is a corporation duly organized, chartered and existing under and by virtue of the laws

of the State of New York with principal places of business at 15 Kensico Drive and 774 N.

Bedford Road, Mount Kisco, New York.

3.      Upon information and belief, Defendant Saeid Tehrani resides at 785 Bryant

Avenue, Roslyn Harbor, New York 11576.

4.      Upon information and belief, Defendant Ariel Tehrani resides at 530 East 76th Street, 19A, New York, New York 10021-3138.

5.      Upon information and belief, Defendant Edmond Geula resides at 6411 219th Street, Oakland Gardens, New York 11364.

6.      Upon information and belief, Defendant Executive Motors, Ltd. (hereinafter "Executive Motors") is a limited liability company duly organized, chartered and existing under and by virtue of the laws of the State of New York with principal places of business at 31-21 Queens Boulevard, Long Island City, New York, 11101.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. § 1332(a)(1), insofar as this action is between citizens of different states, and the amount in controversy exceeds $75,000.

8.      Venue is proper in this United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(a)(2), insofar as this is the district in which a substantial part of the events giving rise to this Complaint occurred and in which a substantial part of the property that forms the subject matter of the action is situated.

## COUNT I

## BREACH OF CONTRACT

9.      Falcon operates new and used motor vehicle dealerships located at 15 Kensico Drive and 774 N. Bedford Road, Mount Kisco, New York.

10.     Defendant Saeid Tehrani is the President of Falcon.

11.     On or about July 31, 2007, Falcon entered into an Inventory Loan and Security Agreement (hereinafter the "ILSA") with HMFC whereby HMFC agreed to provide secured

wholesale inventory floor plan financing to Falcon.  A true and correct copy of the ILSA is annexed hereto as Exhibit "A".

      12.     To secure its obligations under the ILSA, Falcon granted HMFC a security interest in Falcon's motor vehicles, parts inventory, furniture, fixtures, equipment, investment property, accounts, contract rights, intangible property, accounts receivable, and all of the proceeds of the same (the "Collateral").

      13.     HMFC has properly perfected its security interests in the Collateral by the filing of a financing statement with the New York Secretary of State as required by New York law.  A true and correct copy of UCC filing is annexed hereto as Exhibit "B".

      14.     Falcon has been and is in material default of its obligations to HMFC under the terms of the ILSA by virtue of, among other defaults, its insufficient working capital and sales of vehicles out of trust.

      15.     HMFC has made repeated demands upon Falcon to cure its various defaults and pay the amounts due and owing to HMFC under the ILSA.

      16.     On or about January 15, 2008, HMFC, delivered a Demand Letter to Defendants regarding the existing defaults and demanding payment of certain balances due for vehicles sold out of trust.  A true and correct copy of the Demand Letter is annexed hereto as Exhibit "C".

      17.     Falcon failed to comply with HMFC's demands.

      18.     Falcon has failed and/or refused to cure its payment default under the ILSA and remains obligated to HMFC as of February 4, 2008 in the following amounts:

| | | |
|---|---|---|
| a. | New Vehicles: | $1,020,867.00 |
| b. | Used Vehicles: | $ 194,300.00 |
| c. | SOT Vehicles: | $ 316,265.98 |
| d. | Interest and fees (as of 2/4): | $ 15,827.22 |

TOTAL:        $1,547,260.20

19.    As a direct and proximate result of Falcon's breach of the ILSA, HMFC has suffered financial injury, all to its general damage in the amount of $1,547,260.20, together with interest at the respective rates for each obligation under the ILSA accruing through the date of entry of judgment.

WHEREFORE, HMFC Services demands judgment against Falcon for compensatory damages in the amount of $1,547,260.20, plus interest, expenses and the costs of suit.

## COUNT II

### REPLEVIN AND INJUNCTIVE RELIEF - ALL DEFENDANTS

20.    HMFC incorporates the allegations of the preceding paragraphs of this Complaint as if fully stated herein.

21.    HMFC owns, possesses and retains a duly perfected purchase money security interest in and has the right to immediate possession of the Collateral, including but not limited to motor vehicles, parts inventory, furniture, fixtures, equipment, tools, proceeds and general intangibles.

22.    Falcon currently has possession of the Collateral and wrongfully refuses to deliver such Collateral to HMFC.

23.    There is an immediate danger that unless restrained and/or ordered by this Court not to do so, Falcon may transfer, sell, pledge, assign, remove, secrete or otherwise dispose of the Collateral in derogation to HMFC's security interest.

24.    If the Collateral is transferred, sold, pledged, assigned, removed, secreted or otherwise disposed of by Falcon, HMFC's rights to possession of the Collateral will be unduly prejudiced, and HMFC will suffer irreparable injury to which HMFC has no adequate remedy at law.

WHEREFORE, HMFC demands a judgment against Falcon that:

(a)     the Court temporarily, preliminarily and permanently enjoin and

restrain Falcon and its agents, servants, officers, guarantors and employees

from doing or taking, or causing to be done or taking any action to

transfer, sell, pledge, assign, remove, secrete or otherwise dispose of the

Collateral which is in dispute in the subject matter;

(b)     the Court determine that HMFC has possessory

rights to the Collateral superior to Falcon; and

(c)     the Court issue a writ of replevin pursuant to CPLR §7101 *et seq*, made

applicable by Fed. R. Civ. P. 64, for the return of the Collateral to HMFC.

## COUNT III

## BREACH OF CONTINUING GUARANTEES

25.     HMFC incorporates the allegations of the preceding paragraphs of this Complaint

as if fully stated herein.

26.     On or about August 1, 2007, Defendants Saeid Tehrani, Ariel Tehrani, Edmond

Geula and Executive Motors executed their Continuing Guarantees of the obligations of Falcon

to HMFC. True and correct copies of the Continuing Guarantees are annexed hereto as Exhibit

"D".

27.     By virtue of their Continuing Guarantees, Defendants Saeid Tehrani, Ariel

Tehrani, Edmond Geula and Executive Motors are indebted to HMFC for the entire indebtedness

of Falcon under the terms of the ILSA, plus interest at the rate specified in the ILSA until paid in

full.

28.     Defendants have failed and/or refused to make payment of Falcon's indebtedness

to HMFC, and they remain liable under the ILSA, in the amount of $1,547,260.20.

29.    As a direct and proximate result of Defendants Saeid Tehrani, Ariel Tehrani, Edmond Geula and Executive Motors' breach of their Continuing Guarantees, HMFC has suffered financial injury, all to its general damage in the amount of $1,547,260.20, together with interest at the respective rates for each obligation under the ILSA through the date of entry of judgment.

WHEREFORE, HMFC demands judgment against Defendants Saeid Tehrani, Ariel Tehrani, Edmond Geula and Executive Motors for compensatory damages in the amount of $1,547,260.20, plus interest, expenses and the costs of suit.

## COUNT IV

## ATTORNEYS' FEES, COSTS AND EXPENSES

30.    HMFC incorporates the allegations of the preceding paragraphs of this Complaint as if fully stated herein.

31.    The ILSA requires payment by Falcon of the attorneys' costs and expenses incurred by HMFC in connection with the enforcement of its rights under these agreements.

32.    The aforesaid Continuing Guarantees require payment by Defendants Saeid Tehrani, Ariel Tehrani, Edmond Geula and Executive Motors, and each of them, jointly and severally, of the attorneys' fees, costs and expenses incurred by HMFC in connection with the enforcement of its rights against Defendants.

33.    HMFC has and will incur attorneys' fees, costs and expenses in connection with the enforcements of its rights under the aforesaid ILSA and Continuing Guarantees, for all of which sums, as determined and allowed by the Court, HMFC is entitled to judgment against Defendants Falcon, Saeid Tehrani, Ariel Tehrani, Edmond Geula and Executive Motors, jointly and severally.

WHEREFORE, HMFC demands judgment against Defendants Falcon, Saeid Tehrani, Ariel Tehrani, Edmond Geula and Executive Motors, jointly and severally, for all attorneys' fees, costs and expenses incurred by HMFC in connection with the enforcement of its rights herein in an amount to be determined by the Court.

DATED: February __7__, 2008
           Albany, New York

                                       _____
                                       F. Matthew Jackson, Esq.
                                       Deily, Mooney & Glastetter, LLP
                                       Attorneys for Plaintiff, Hyundai Motor
                                       Finance Company
                                       8 Thurlow Terrace
                                       Albany, New York 12203
                                       Ph.  (518) 436-0344
                                       Fax (518) 436-8273
                                       e-mail:  mjackson@deilylawfirm.com

Ex. A

## INVENTORY LOAN AND SECURITY AGREEMENT

This Agreement is entered into by and between HYUNDAI MOTOR FINANCE COMPANY having an address at 10550 Talbert Avenue, Fountain Valley, CA 92728 ("Lender") and FALCON MOTORS, INC., a New York corporation, ("Dealer") having an address at 4319 Van Dam Street Suite 2, Long Island City, NY 11101.

Dealer, in the course of its business, acquires new and used motor vehicles, trucks and chassis ("Vehicles" or singularly "Vehicle") from manufacturers, distributors or other sellers. Dealer has requested Lender, and Lender agrees, to finance Dealer's inventory of Vehicles, subject to the following terms and conditions:

1. **ADVANCES**
   a) Advances hereunder may be made by Lender:
      i) On Dealer's behalf to manufacturers, distributors or other sellers of Vehicles to Dealer;
      ii) Directly to Dealer for the purpose of Dealer's acquisition or holding of Vehicle inventory; or
      iii) On Dealer's behalf to a third party which has previously financed Dealer's Vehicle inventory.
   b) Lender is authorized and requested to deal directly with manufacturers, distributors or other sellers of Vehicles in arranging payment on Dealer's behalf. Lender may rely upon any invoice or advice from any such manufacturer, distributor or other seller as being correct in all respects and Lender is relieved and released from any responsibility or liability for the correctness, validity or authenticity of any invoice or other instrument presented to it for payment or for the existence, quality, condition, identity, value, title or delivery of property purported to be represented by any such invoice or other instrument.
   c) Lender will establish and may from time to time, in its discretion, increase or decrease the total of advances to be made to or on behalf of Dealer and the makes, models, types and age of Vehicles eligible for advances.

2) **INTEREST AND CHARGES**
   All advances by Lender pursuant to Section 1 hereof, and all other indebtedness of Dealer to Lender under this Agreement shall bear interest from the date of advance by Lender to the date of payment by Dealer at the annual rate, calculated on the basis of a 365 day year and the actual number of days elapsed, established in the Interest Rate and Charges Addendum in effect between Lender and Dealer. In no event shall the rate of interest exceed the maximum permitted by applicable law, which the parties recognize may change from time to time.

   Interest on the total amount owed by Dealer under this Agreement, together with any applicable charges, shall be due and payable monthly within ten (10) calendar days of the date of billing by Lender.

3) **PAYMENT BY DEALER**
   Dealer promises to pay Lender all indebtedness created pursuant to this Agreement as follows:

   a) As each Vehicle upon which Lender has made an advance is sold by Dealer, Dealer agrees to remit faithfully and immediately to Lender the amount of the outstanding advance by Lender on such Vehicle; provided, however, that absent an Event of Default, as defined in Section 8 hereof, Dealer shall have the privilege of paying such amount to Lender no later than the earlier of (i) the fifteenth calendar day after the sale or (ii) the second business day after funding of such Vehicle sale. For purposes of this Section 3, the date of sale is defined as the earliest to occur of (a) the date of delivery of the Vehicle to the customer, (b) the contract date, (c) the date the manufacturer's certificate of origin or certificate of title is assigned to Lender, or (d) the date the Dealer is paid for the Vehicle. Dealer acknowledges and agrees that the above privilege is solely for the administrative convenience of Dealer and may be revoked without prior notice at any time if, in the sole judgment of Lender, Dealer has failed to comply with the terms hereof. Notwithstanding anything herein to the contrary Lender will collect the amount of the outstanding advance(s) on any sold Vehicle(s) for which Dealer has received but not yet remitted payment at the time of any audit.

   b) In the event that, in the judgment of Lender, the value of any Vehicle upon which an advance has been made becomes reduced, such as by the introduction of new model year motor vehicles, Lender may, in its discretion, require Dealer to remit all or a portion of the advance on any such Vehicle.

    c) In the event any new Vehicle upon which Lender has made an advance is not sold by Dealer within 365 days of such advance, Lender may, in its discretion, require Dealer, and Dealer promises, to repay immediately such advance upon demand by Lender.

**4) TERMINATION OR SUSPENSION OF ADVANCES**

Lender may terminate this Agreement or suspend advances to Dealer:

    a) Upon an Event of Default as defined in Section 8; or

    b) If Lender in its judgment believes that further advances to Dealer are not justified due to changes in Dealer's financial condition or other changes in Dealer's business or prospects; provided, however, that in the event of termination of this Agreement on such basis, Lender shall provide Dealer with ninety (90) days prior written notice of termination, which the parties agree shall constitute a reasonable notice period and a reasonable period to enable Dealer to secure financing from another source. At any time on or after the effective date of termination, Lender may, in its discretion, accelerate the entire indebtedness due from Dealer and Dealer promises to pay such amounts upon demand. Any such termination or suspension of advances shall not alter or affect the rights and obligation of the parties with regard to any indebtedness incurred prior to the effective date of any such termination or suspension.

**5) COLLATERAL**

For the purpose of securing the indebtedness of Dealer under this Agreement, or any other indebtedness of Dealer to Lender, now existing or hereafter arising, Dealer hereby grants Lender a security interest in the following described now owned or hereafter acquired property of Dealer ("Collateral"):

    a) All inventory of new and used motor vehicles and other personal property held for sale or lease including, but not limited to, display or demonstration items, returns and repossessions, and all accessories and additions or accessions thereto;

    b) All accounts or rights to payment of money including, but not limited to, accounts receivable from any manufacturer or distributor, and any dealer participation or other account maintained by Lender in the name of Dealer;

    c) All chattel paper, contract rights and general intangibles;

    d) All office furniture, shop equipment, computer equipment and records, tools, lease improvements and fixtures, and other personal property; and

    e) All cash and non-cash proceeds of all of the foregoing including, but not limited to, insurance proceeds, vehicles taken on trade, chattel paper, accounts or assignments of accounts.

the word "indebtedness" includes any and all now existing or hereafter existing advances, obligations to advance, debts, obligations or liabilities of Dealer to Lender, whether direct or indirect, contingent or absolute, liquidated or unliquidated, voluntary or involuntary or whether Dealer may be liable individually or jointly with others.

Dealer agrees to execute such supplemental documents or financing statements as Lender may require to evidence or perfect the security interest granted herein. Lender may, in its discretion, obtain or require Dealer to deliver to Lender any manufacturer's certificate of origin, certificate of title or other document of title for each Vehicle and Lender may retain such document in its possession until such Vehicle is sold by Dealer and Dealer's indebtedness related thereto is paid. The security interest granted by Dealer to Lender shall be a first and prior security interest.

**6) USE AND PROTECTION OF COLLATERAL**

Dealer may exhibit and sell Collateral only in the ordinary course of business and shall protect and secure the Collateral. Dealer will keep the Collateral free of taxes, liens or encumbrances, and any amounts which may be paid by Lender, in its discretion, in release or discharge thereof shall be paid by Dealer to Lender upon demand and shall be part of the indebtedness secured under this Agreement. Collateral shall not be used illegally or improperly. Lender shall have the right at any time to inspect the Collateral and Dealer's books and records related thereto. Dealer will not move the Collateral from the dealership premises without the prior written consent of Lender. Dealer may not use any Vehicle for demonstration purposes without prior consent of Lender and execution of a Demonstrator Addendum.

**7) INSURANCE**

Dealer, at its expense, shall keep the Collateral insured against all risks in such amounts and with such insurance carriers as are acceptable to Lender. All such insurance policies shall designate Lender as loss payee, and shall not be cancelable except upon thirty (30) days prior written notice to Lender. In the event Dealer fails, promptly upon demand by Lender, to provide satisfactory evidence of insurance required hereunder, Lender may, in its discretion, obtain such insurance and pay any premiums and charges therefore, and any such amounts paid by Lender shall be paid by Dealer to Lender upon demand and shall be part of the indebtedness secured under this Agreement.

**8) EVENT OF DEFAULT**

An Event of Default shall include the following:

a) A default by Dealer in the payment of any indebtedness or performance of any obligation under this Agreement or any other agreement between Lender and Dealer;

b) The institution of a proceeding in bankruptcy, receivership or insolvency by or against Dealer or its property;

c) An assignment by Dealer for the benefit of creditors;

d) The failure of Dealer to maintain, in good standing, any franchise, license, permit or other agreement necessary for the proper operation of Dealer's business;

e) A statement or representation made by Dealer for the purpose of obtaining credit from Lender is determined to be false;

f) The Collateral becomes in danger of loss, misuse, seizure or confiscation;

g) The revocation of any guaranty of the indebtedness of Dealer absent consent by Lender, or the occurrence of any event or circumstances which, in the judgment of Lender, materially and adversely affects the ability of any such guarantor to honor such guaranty or;

h) The occurrence of any event, or material adverse change in the financial condition or business operations of Dealer, such as to cause Lender, in its judgment, to believe the ability of Dealer to repay its indebtedness or honor its obligations to Lender has been substantially impaired.

**9) RIGHTS AND REMEDIES UPON DEFAULT**

Upon the occurrence of an Event of Default, Lender may, in its discretion, accelerate the entire indebtedness due from Dealer and may take immediate possession of the Collateral without demand or further notice and without legal process. Lender may, in its discretion, require Dealer to remit to Lender all proceeds of sale of each item of Collateral immediately upon receipt thereof by Dealer. Dealer authorizes Lender to contact any account debtor of Dealer in order to verify the amount and status of any such debt and to arrange direct payment thereof to Lender. Dealer further authorizes Lender to contact any third party having possession of Collateral to arrange return thereof directly to Lender. Dealer shall, if so requested by Lender, assemble the Collateral and make it available to Lender at such location as Lender may designate. Lender shall have the right and Dealer hereby authorizes Lender to enter upon the premises wherever Collateral may be and remove same or to store same at such location, without any obligation for rent or other reimbursement to Dealer or Dealer's landlord, pending sale or other disposition thereof. Dealer shall pay all expenses and reimburse Lender for any expenditures, including reasonable attorney's fees and legal expenses, in connection with Lender's exercise of any of its rights and remedies under this Agreement or the enforcement of any provision hereof. Upon an Event of Default, in addition to the rights specified herein, all rights and remedies afforded Lender under this Agreement and under applicable law shall be available. In the event that the application of proceeds from the disposition of Collateral to the indebtedness of Dealer results in a deficiency, such deficiency shall bear interest at the rate specified in this Agreement and shall be paid by Dealer upon demand by Lender.

Finally, Dealer agrees that the sale by Lender of any Collateral, repossessed by Lender, to the manufacturer, distributor or seller thereof, or to any person designated by such manufacturer, distributor or seller, at the invoice cost to Dealer, less any credits or other discounts granted to Dealer with respect thereto, and less reasonable costs, including but not limited to the costs of transportation and reconditioning, shall be deemed to be a commercially reasonable means of disposing of the same. Dealer further agrees that the return by Lender of any Collateral, repossessed by Lender, to the manufacturer, distributor or seller thereof, in accordance with any repurchase or other agreement between Dealer or Lender and such manufacturer, distributor or seller shall also be deemed to be commercially reasonable means of disposing of the same. Notwithstanding the foregoing, it is expressly understood that such means of disposal shall not be exclusive, and that Lender shall have the right to dispose of any Collateral repossessed hereunder by any commercially reasonable means.

**10) JURY WAIVER**

Lender and Dealer agree that, in the event of litigation between the parties regarding the performance or enforcement of this Agreement, or in any other manner related to this Agreement, the parties, for their mutual benefit and intending to reduce litigation expenses, hereby waive any right to trial by jury.

**11) SUCCESSORS AND ASSIGNS**
This Agreement shall be binding upon and inure to the benefit of the respective successors and assigns of the parties. Notwithstanding the foregoing, Dealer has no right of assignment absent prior written consent of Lender.

**12) ENTIRE AGREEMENT**
Except as otherwise provided or referred to herein, there are no other agreements or understandings, either oral or in writing, between the parties affecting this Agreement or relating to any of the subject matters covered by this Agreement. This Agreement cancels and supersedes all previous agreements between the parties that relate to any matters covered herein provided, however, that no debts, rights or obligations previously incurred by either party shall be affected. This Agreement may be amended only by a writing signed by both parties.

**13) MISCELLANEOUS**
No waiver of any rights of Lender shall be valid unless contained in a writing signed by it. Any delay on the part of Lender in the exercise of any right or remedy shall not operate as a waiver thereof.

Dealer acknowledges that it has furnished Lender with certain financial or business information in order to induce Lender to enter into this Agreement and upon which Lender has relied in doing so, and Dealer hereby certifies that all such information is complete and accurate in all respects. Dealer shall furnish Lender promptly upon request any additional financial or business information in such form and with such frequency as may be required by Lender. Dealer authorizes Lender to make such inquiries of third parties concerning the financial condition or business operations of Dealer as Lender may deem necessary. Dealer further specifically agrees and authorizes Lender to inspect, examine, and secure from Hyundai Motor America, or any of its affiliated companies, (hereinafter collectively referred to as "Hyundai"), at any time copies of all financial statements and other financial data, and all other statements, reports, records, and other information that Dealer has furnished previously, or may hereafter furnish, to Hyundai, or that Hyundai may have prepared or obtained, or may hereafter prepare or obtain, in connection with any audit or review by it of the Dealer's business, and Hyundai may consider Dealer's execution of this Agreement as its authority to release the foregoing to Lender. Dealer further authorizes Lender to furnish Hyundai at any time copies of all financial statements and other financial data, and all other statements, reports, records and other information (i) that Dealer previously has furnished, or may hereafter furnish, to Lender, or (ii) that Lender may have prepared or obtained, or may hereafter prepare or obtain, in connection with any audit or review of Dealer's business by Lender.

**14) SAVINGS CLAUSE**
It is the intention of the parties that this agreement be construed and interpreted in such a manner so as to be valid under applicable law. Any provision of this Agreement prohibited by law shall be ineffective to the extent of such prohibition without invalidating the remaining provisions hereof.

**15) CHOICE OF LAW**
This Agreement shall be governed in accordance with the laws of the state in which Dealer is located as indicated herein.

**16) COVENANTS**
a) Dealer shall maintain a Current Ratio of not less than 1.15:1. Current Ratio is computed by dividing the total dollar amount of current assets (including any last-in, first-out ("LIFO") adjustments) less any intangible assets by the total dollar amount of current liabilities. In the event the Current Ratio falls below 1.15:1 for more than two (2) successive calendar months, Dealer will cure such exception (s) within thirty (30) days.

b) Dealer must maintain a Tangible Net Worth Ratio (as defined below) not to exceed 7.0:1. "Tangible Net Worth Ratio" shall mean Dealer's total liabilities divided by net worth (minus any value for goodwill, trademarks, patents, copyrights, organizational expense and other similar intangible assets, plus subordinated debt, plus sixty percent (60%) of any LIFO adjustments). In the event the Tangible Net Worth Ratio exceeds the requirement for more than two (2) successive calendar months, Dealer will cure such exception(s) within thirty (30) days.

Executed on this 31 day of _____July_____, 2007.

FALCON MOTORS, INC.,
a New York corporation

HYUNDAI MOTOR FINANCE COMPANY

Name & Title: _____

Saeid Tehrani
President

By: _____

Sam Frobe
National Manager, Commercial Credit

4

# HYUNDAI MOTOR FINANCE COMPANY
## INVENTORY LOAN AND SECURITY AGREEMENT
## INTEREST RATE AND CHARGES ADDENDUM

Pursuant to Section 2 of the Inventory Loan and Security Agreement ("Agreement") between Hyundai Motor Finance Company ("Lender") and the undersigned dealer ("Dealer"), the annual rate of interest and other charges shall be as follows:

### FOR NEW, PROGRAM, DEMONSTRATOR, AND SERVICE LOANER VEHICLES:
**Interest Rate:** Index Rate plus ____0.50____ % per annum; provided, however, that upon occurrence and during the continuation of an Event of Default under the Agreement, the foregoing Interest Rate shall be increased by two percent (2.00%) per annum.

Maturity for Program Vehicles is six months. "Program Vehicles" are defined as current model year or 1 year-old Hyundai vehicles with 15,000 miles or less returned from daily rental service and purchased at auction or private sale, and current model year or 1 year-old Hyundai titled factory demonstrators purchased from Hyundai Motor America at auction or private sale.

Maturity for Demonstrator Vehicles is twelve months. For each Demonstrator Vehicle, Dealer agrees to remit an amount equal to 2% of the principal amount originally advanced, beginning on the 4th month following the date of the advance and continuing through the 11th month.

Maturity for Service Loaner Vehicles is twelve months. For each factory ordered Service Loaner Vehicle, Dealer agrees to remit an amount equal to 1.00% of the principal amount originally advanced, beginning on the 1st month following the date of the advance and continuing through the 11th month.

### FOR USED VEHICLES:
**Interest Rate:** Index Rate plus____1.00____% per annum; provided however, that upon occurrence and during the continuation of an Event of Default under the Agreement, the foregoing Interest Rate shall be increased by two percent (2.00%) per annum.

Maturity for Used Vehicles is four months. Lender may determine whether a vehicle is "new" or "used" in its sole discretion.

Lender shall establish and may, from time to time, in its discretion, increase or decrease the total of advances to be made to or on behalf of Dealer with respect to used vehicles, the makes, models, types and age of such vehicles eligible for advances, as well as the amount which will be advanced with respect to each such vehicle.

### OTHER TERMS:

As used herein, "Index Rate" shall equal the floating commercial loan rate of Bank of America, N.A. announced from time to time as its "prime rate" or "base rate" (herein called "prime rate"). Any change in the Bank of America, N.A. prime rate shall effect immediately a corresponding change in the Index Rate. Notwithstanding anything expressed or implied herein to the contrary, it is recognized that the Bank of America, N.A. prime rate and the Index Rate are not necessarily the rates of interest charged by the Bank of America, N.A. or Lender to their respective most creditworthy customers.

Lender may, in its sole discretion from time to time, change the definition of the Index Rate, the percentage specified in excess thereof, and/or the other charges, by means of a revised Interest Rate and Charges Addendum executed by Dealer and Lender; provided, however, that in the event Dealer refuses to execute such a revised Addendum within five (5) calendar days after a request to do so from Lender, then Lender may suspend advances to be made after the proposed effective date of such change and terminate the Agreement in accordance with the notice provisions of Section 4.b. thereof.

The repayment schedule noted above is in addition to and not in lieu of the Dealer's obligation to repay any advance in accordance with Section 3.a. and 3.b. of the Agreement.

The parties agree that any Demonstrator Addendum entered into prior to the Agreement or this Addendum shall be subject to the Agreement.

Executed on this ___31___ day of _____July_____ 2007.

FALCON MOTORS, INC.                          HYUNDAI MOTOR FINANCE COMPANY

By: _____             By: _____
     Saeid Tehrani, President                     Sam Frobe
                                                  National Manager, Commercial Credit

2

Ex. B

**782712**          **2007 Aug 21 PM06:46**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Diligenz (800)858-5294

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Diligenz, Inc.
6500 Harbour Heights Pkwy, Suite 400
Mukilteo, WA 98275, USA
NYFilings@Diligenz.com
(Fax)(800)345-0659

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME FALCON MOTORS INC. | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS 43-19 Van Dam Street Suite II | CITY Long Island City | STATE NY | POSTAL CODE 11101 | COUNTRY USA |
|---|---|---|---|---|

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION Corporation | 1f. JURISDICTION OF ORGANIZATION NY | 1g. ORGANIZATIONAL ID #, if any None | ☒ NONE |
|---|---|---|---|---|---|

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME Hyundai Motor Finance Company | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS 10550 Talbert Ave. | CITY Fountain Valley | STATE CA | POSTAL CODE 92708 | COUNTRY USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:
A. All inventory of new and used motor vehicles and other personal property held for sale or lease including, but not limited to display or demonstration items, returns and repossessions, and all accessories and additions or accessions thereto;
B. All accounts or rights to payment of money including but not limited to, accounts receivable from any manufacturer, distributor, and any dealer participation or other account maintained by Secured Party(ies) in the name of the Debtor(ies);
C. All chattel paper, contract rights and general intagibles;
D. All office furniture, shop equipment, computer equipment and records, tools, lease improvements and fixtures, and other personal property; and
E. All cash and non-cash proceeds of all the foregoing including, but not limited to, insurance proceeds, chattel paper, accounts or assignments of accounts.

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS. Attach Addendum (if applicable) | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA [28450956] | | | | | | |

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**Filing Number-200708215816579**

Ex. C



**Hyundai Motor Finance Company**
10550 Talbert Avenue, P.O. Box 20809, Fountain Valley, CA 92728-0809
TEL: 714-965-3000 FAX: 714-965-7010
WEB: www.hyundaiUSA.com

January 15, 2008

**Via Hand Delivery**
Mr. Ariel Tehrani
Mr. Saeid Tehrani
Falcon Motors, Inc., d/b/a: Falcon Hyundai
4319 Van Dam Street, Suite 2
Long Island, NY 11101

Re: Inventory Loan and Security Agreement dated July 31, 2007 – Demand and Termination Notice

Gentlemen:

Hyundai Motor Finance Company ("HMFC") hereby gives notice that Falcon Motors, Inc., dba Falcon Hyundai ("Dealer") is in default with respect to its obligations pursuant to the Inventory Loan and Security Agreement dated July 31, 2007 ("Agreement") between Dealer and HMFC. As you are aware, a number of vehicles remain unpaid in violation of the payment requirements set forth in Section 3(a) of the Agreement (the "SOT").

HMFC hereby demands immediate payment in full of the amount of $142,834.37, which remains outstanding as of the date of this letter. In the event this default is not promptly cured, HMFC reserves the right to exercise any of its remedies under the Agreement, up to and including termination of the floor plan line of credit.

HMFC's records and Dealer audits reflect not only the SOT condition, but also other serious and continuing shortcomings in Dealer's financial position, constituting Events of Default. In addition to the SOT default with respect to Section 3(a), Dealer has breached additional conditions and requirements of the Loan Agreement.

The continuing lack of adequate capitalization, a clear departure from the capitalization that was promised by Dealer and relied upon by HMFC, is unacceptable. Dealer agreed to supply evidence of initial capitalization, which HMFC indicated was to be $1,547,000. Such capitalization was to occur via capital stock and/or Additional Paid-In-Capital. Dealer has acknowledged that this capital contribution did not and has not occurred.

This ongoing lack of capital has resulted in defaults under Section 16 of the Loan Agreement. Dealer agreed to maintain a Current Ratio of not less than 1:15:1 and a Tangible net Worth Ratio (both as defined in the Loan Agreement) not to exceed 7:0:1, and to cure any exception within thirty days. Without the needed capital, Dealer is out of compliance with these obligations. Moreover, Dealer has not provided any plan to implement a cure.

**As a result, HMFC is no longer willing to provide a floor plan line of credit to the Dealer. HMFC hereby notifies Dealer of its intent to terminate the Loan Agreement between HMFC and Dealer effective 90-days from the date of this letter, as provided by Section 4(b) of the Loan Agreement.**

HMFC is willing to cooperate with Dealer for a limited time period to permit Dealer time to locate another source of financing, only upon satisfaction of **all** of the following terms and conditions:

1. **Dealer must remit the full SOT amount to HMFC in good funds before the close of business on Thursday, January 17, 2008.** Furthermore, Dealer shall abide by the vehicle repayment terms as contained in Section 3 of the Inventory Loan and Security Agreement at all times until Dealer's refinancing with another financing source.

2. Nothing in this letter is intended to modify and Dealer shall continue to adhere to the terms of the Loan Agreement until HMFC is paid in full. At all times, Dealer shall, without limitation, adhere to all obligations relating to the Collateral, make prompt payment to HMFC on all sold units, and shall conduct dealership business such that there is no further deterioration in Dealer's financial position.

3. Dealer acknowledges that HMFC's cooperation with Dealer during this interim period is intended solely to permit Dealer time to locate another financing source and strictly conditioned upon Dealer's adherence to all of the terms of this letter and the Loan Agreement.

4. HMFC reserves the right to increase the frequency of audits at any time, in its sole discretion, with Dealer to bear all costs of such additional audits.

Except as expressly set forth above, HMFC reserves the right to exercise, in its discretion, at any time any and all of its rights and remedies under the Loan Agreement, including without limitation pursuant to Section 4(a) thereof, under any guaranty, applicable law and at equity. Upon any further default under the Loan Agreement by Dealer, breach of any obligation of Dealer hereunder or if any conditions hereunder are not met, HMFC may immediately take any and all actions that it may, in its sole discretion, deem appropriate under the Loan Agreement, including without limitation, repricing of interest and charges, imposition of the default rate of interest, suspension of Advances, pursuit of its rights against the Collateral, termination of the Loan Agreement, acceleration of the indebtedness and/or any remedies available under any guaranty, applicable law or at equity. No actions or delay in acting shall constitute a waiver of HMFC's rights under the Loan Agreement, any guaranty and/or related documents or applicable law. All capitalized terms not defined in this letter shall have the meanings ascribed to them in the Loan Agreement.

Should you have any questions, please contact me at 714.965.3370.

Sincerely,

John Moriarty
Manager, Dealer Audit and Risk


cc: Ariel Tehrani, Guarantor (Personal and Confidential
    Saeid Tehrani., Guarantor (Personal and Confidential)
    Edmond Geula, Guarantor (Personal and Confidential)
    Executive Motors, Ltd., Guarantor
    Elizabeth A. Patton, Assistant General Counsel, Director, HMFC

Ex. D

**CONTINUING GUARANTY AND SUBORDINATION AGREEMENT ("Guaranty")**

TO:    HYUNDAI MOTOR FINANCE COMPANY

1.        For valuable consideration, the receipt of which is hereby acknowledged, the undersigned, Executive Motors, Ltd., a New York corporation (hereinafter referred to as "Guarantor") unconditionally guarantees and promises to pay to Hyundai Motor Finance Company (hereinafter referred to as "Hyundai Finance"), or order, on demand in lawful money of the United States, any and all present and future indebtedness of Falcon Motors, Inc., a New York corporation  hereinafter referred to as ("Borrower") to Hyundai Finance.

The word "indebtedness" is used herein in its most comprehensive sense and includes any and all present and future advances, debts, obligations and liabilities of Borrower, now and hereafter made, incurred or created, whether or not accelerated and however arising, whether liquidated or unliquidated, determined or undetermined, and whether Borrower may be liable individually or jointly with others, or whether such indebtedness may be or hereafter become otherwise unenforceable for any reason, including but not limited to becoming barred by any statue of limitations.

2.        This is a continuing guaranty relating to any present and future indebtedness, including that arising under successive transactions which shall either continue the indebtedness or from time to time renew it.  This Guaranty shall not apply to any indebtedness created more than two business days after the actual receipt by Hyundai Finance of written notice of its revocation as to future transactions; provided that such notice of revocation shall not be effective as to any guarantor who has failed to give such notice, and shall not release Guarantor from liabilities for payment of: (i) any and all indebtedness then in existence, (ii) any refinancings, renewals or extensions thereof, in whole or in part, whether such refinancings, renewals or extensions are made before or after such revocation or any revocation by operation of law, and (iii) any damages, losses, costs, interest, charges attorney's fees or expenses then or thereafter incurred in connection with such indebtedness or any refinancings, renewals or extensions thereof.  Any payment by Guarantor shall not reduce the maximum obligation hereunder unless written notice to that effect is actually received by Hyundai Finance at or prior to the time of such payment.  The obligations of Guarantor hereunder shall be in addition to any obligations of Guarantor under any other guaranties of the indebtedness of Borrower or any other persons heretofore given or hereafter to be given to Hyundai Finance unless such other guaranties are expressly modified or revoked in writing; and this Guaranty shall not, unless expressly herein provided, affect or invalidate any such other guaranties.  The liability of Guarantor to Hyundai Finance shall at all times be the aggregate liability of Guarantor under the terms of this Guaranty and of any other guaranties given by Guarantor to Hyundai Finance and not expressly revoked, modified or invalidated.

3.        The obligation of Guarantor hereby created is joint and several, and Hyundai Finance is authorized and empowered to proceed against Guarantor without joining Borrower or any other guarantor or party.  All of the parties may be sued together, or any of them may be sued separately without first or contemporaneously suing the others.  There shall be no duty or obligation upon Hyundai Finance, whether by notice under any applicable statute or otherwise: (i) to proceed against Guarantor, Borrower or any other guarantor or party, (ii) to initiate any proceeding or exhaust any remedy against Guarantor, Borrower, or any other guarantor or party, or (iii) to give any notice to Guarantor, Borrower, or any other proceedings of any kind, against Borrower, Guarantor, or any of them.  Guarantor agrees that any payment of any indebtedness or other act which shall toll any statute of limitations applicable to any proposed action against Borrower shall similarly operate to toll such statute of limitations as to Guarantor's liability hereunder.

4.        Guarantor agrees that Hyundai Finance may at any time, either with or without consideration, surrender, release or receive any property or other security of any kind or nature whatsoever held by it or any person on its behalf or for its account securing any indebtedness of Borrower, or any liability, or substitute any collateral so held by Hyundai Finance for other collateral of like kind, or of any kind, without notice to or further consent from guarantor, and such surrender, receipt, release or substitution shall not in any way affect the obligation of Guarantor hereunder.  Hyundai Finance shall have full authority to adjust, compromise and receive less than the amount due upon any such collateral, and may enter into any accord and satisfaction agreement with respect to the same as may seem advisable to Hyundai Finance without affecting the obligation of Guarantor hereunder, which shall remain absolute, primary and unconditional.  Hyundai Finance shall be under no duty to undertake to collect upon such collateral or any part thereof, and shall not be liable for any negligence or mistake in judgment in handling, disposing of, obtaining, failing to collect upon, or perfecting a security interest in, any such collateral. Hyundai Finance may collect or otherwise liquidate any collateral in any manner and bid and purchase at any sale without affecting or impairing the obligation of Guarantor hereunder.

5.  Guarantor agrees that, at any time or times, without notice to or further approval of Guarantor or Borrower, and without in any way affecting the obligation of Guarantor hereunder, Hyundai Finance may, with or without consideration: (i) release, compromise, or agree not to sue, in whole or in part, Borrower, or any other obligor, guarantor, endorser or surety upon any of the indebtedness; (ii) waive, rescind, renew, extend, modify, increase, decrease, delete, terminate, amend, or accelerate in accordance with its terms, either in whole or in part, any of the indebtedness, any of the terms thereof, or any agreement, covenant, condition, or obligation of or with Borrower, or any other obligor, guarantor, endorser or surety upon any of the liabilities; and (iii) apply any payment received from Borrower, or any other obligor, guarantor, endorser or surety upon any of the indebtedness to any indebtedness which Hyundai Finance may choose.

6.  Guarantor waives any right to require Hyundai Finance to proceed against Borrower, proceed against or exhaust any security held from Borrower, or pursue any other remedy in Hyundai Finance's power whatsoever. Guarantor waives any defense and cause of action or claim for relief arising by reason of the cessation, discharge or release from any cause whatsoever of the liability of Borrower, such a cause to include, but not be limited to, an act or omission by Hyundai Finance, or any election by Hyundai Finance to pursue or foreclose on certain security of Borrower (such as real property) non-judicially or judicially without first or contemporaneously pursuing or foreclosing on other security of Borrower. Guarantor shall remain liable even though Hyundai Finance may take action that releases or discharges Borrower or any other person from liability on the indebtedness and thereby impairs Guarantor's rights of subrogation or reimbursement against Borrower or such person; and guarantor specifically waives any protection or benefit that may be conferred upon Guarantor by any statutes regarding forms of action, deficiencies, and the enforcement of real property security interests. Until all indebtedness of Borrower to Hyundai Finance shall have been paid in full, even though such indebtedness is in excess of Guarantor's liability hereunder, Guarantor shall have no right of subrogation, and hereby waives any right to enforce any remedy which Hyundai Finance now has or may hereafter have against Borrower, and waives any benefit of, and any right to participate in, any security now or hereafter held by Hyundai Finance. Guarantor waives all presentments, demands for performance, notice of non-performance, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guaranty and of the existence, creation or incurring of new or additional indebtedness. Guarantor is fully aware of the financial condition of Borrower, and is executing and delivering this Guaranty at Borrower's request and based solely upon Guarantor's own independent investigation of all matters pertinent hereto and is not relying in any manner upon any representations or statements of Hyundai Finance with respect thereto. Guarantor represents and warrants that Guarantor is in a position to obtain, and Guarantor hereby assumes full responsibility for obtaining, any additional information concerning the financial condition of Borrower and any other matter pertinent hereto as Guarantor may desire, and Guarantor is not relying upon or expecting Hyundai Finance to furnish to Guarantor any information now or hereafter in Hyundai Finance's possession concerning the same or any other matter.

By executing this Guaranty, Guarantor knowingly accepts the full range of risks encompassed within a contract of continuing guaranty, which risks Guarantor acknowledges include without limitation the possibility that Borrower will incur additional indebtedness for which Guarantor will be liable hereunder after Borrower's financial condition or ability to pay such indebtedness has deteriorated and/or after bankruptcy or insolvency proceedings have been commenced by or against Borrower. Guarantor shall have no right to require Hyundai Finance to obtain or disclose any information with respect to the indebtedness, the financial condition or character of Borrower, the existence of any collateral or security for any or all of the indebtedness, the filing by or against Borrower of any bankruptcy or insolvency proceeding, the existence of any other guaranties of all or any part of the indebtedness, any action or non-action on the part of Hyundai Finance or any other person, or any other matter, fact or occurrence whatsoever.

Guarantor also hereby waives any claim, right or remedy which such Guarantor may now have or hereafter acquire against Borrower that arises hereunder and/or from the performance by any Guarantor hereunder including, without limitation, any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right or remedy of Hyundai Finance against Borrower or any security which Hyundai Finance now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise.

Until all indebtedness of Borrower to Hyundai Finance shall have been paid in full, Guarantor covenants and agrees that it shall not, at any time, guarantee any indebtedness on behalf of any other motor vehicle dealership without prior written consent of Hyundai Finance.

7.  In addition to all liens upon, and rights of setoff against, the moneys, securities or other property of Guarantor given to Hyundai Finance by law, Hyundai Finance shall have a lien upon and a right of setoff against all moneys, securities and other property of Guarantor now and hereafter in the possession of Hyundai Finance or any of its affiliate companies, whether held in a general or special account, or for safekeeping otherwise; and every such lien and right of setoff may be exercised without demand upon or notice to Guarantor. No lien or right of setoff shall be deemed to have been waived by any act or conduct on the part of Hyundai Finance, or by any neglect to exercise such right of setoff or to enforce such lien, or by any delay in so doing, and every right of setoff and lien shall continue in full force and effect until such right of setoff or lien is specifically waived or released by an instrument in writing executed by Hyundai Finance.

8.  Any indebtedness of Borrower now or hereafter held by Guarantor is hereby subordinated to the indebtedness of Borrower to Hyundai Finance; and such indebtedness of Borrower to Guarantor is assigned to Hyundai Finance as security for this Guaranty and the indebtedness, and if Hyundai Finance so requests shall be collected, enforced and received by Guarantor as trustee for Hyundai Finance to be paid over to Hyundai Finance on account of the indebtedness of Borrower to Hyundai Finance but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.

9.  Guarantor shall furnish to Hyundai Finance such financial or other statements respecting the condition, operation and affairs of Guarantor or Guarantor's property as Hyundai Finance may from time to time reasonably require. Guarantor shall in any event furnish Hyundai Finance with such financial statements no less frequently than annually.

10.  It is not necessary for Hyundai Finance to inquire into the powers of Borrower or the officers, directors, or agents acting or purporting to act in its behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed hereunder.

11.  In the event that any action or proceeding is commenced by Hyundai Finance to enforce the terms and provisions of this Guaranty, Hyundai Finance shall receive from Guarantor all of its costs and expenses incurred in connection with such action or proceeding including its reasonable attorneys' fees and court costs. Each party hereby waives trial by jury in any such action or proceeding.

12.  All of Hyundai Finance's rights and remedies are cumulative and those granted hereunder are in addition to any rights and remedies available to Hyundai Finance under law. If any provision of this Guaranty or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Guaranty or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby, and each provision of this Guaranty shall be valid and enforceable to the full extent permitted by law. The failure or forbearance of Hyundai Finance to exercise any right hereunder or otherwise granted to it by law or another agreement shall not affect the obligations of Guarantor hereunder and shall not constitute a waiver of such right. This Guaranty contains the entire agreement between the parties, and no provision hereof may be waived, modified, or altered except by a writing executed by Guarantor and Hyundai Finance.

13.  This Guaranty shall be governed by and construed in accordance with the laws of the state where the Borrower is located.

IN WITNESS WHEREOF the undersigned, being duly authorized on behalf of the Guarantor, has executed this Guaranty and affixed its signature this 1ˢᵗ day of August , 2007

Guarantor: Executive Motors, Ltd

By: _____

Name and Title: Saeid Tehrani, President

Address: _____

_____

Witness
Signature: _____

Witness Name: _____

Address: _____

**CONTINUING GUARANTY AND SUBORDINATION AGREEMENT ("Guaranty")**

TO:    HYUNDAI MOTOR FINANCE COMPANY

1.           For valuable consideration, the receipt of which is hereby acknowledged, the undersigned, Edmond Geula (hereinafter referred to as "Guarantor") unconditionally guarantees and promises to pay to Hyundai Motor Finance Company (hereinafter referred to as "Hyundai Finance"), or order, on demand in lawful money of the United States, any and all present and future indebtedness of Falcon Motors, Inc., a New York corporation, hereinafter referred to as ("Dealership") to Hyundai Finance.

The word "indebtedness" is used herein in its most comprehensive sense and includes any and all present and future advances, debts, obligations and liabilities of Dealership, now and hereafter made, incurred or created, whether or not accelerated and however arising, whether liquidated or unliquidated, determined or undetermined, and whether Dealership may be liable individually or jointly with others, or whether such indebtedness may be or hereafter become otherwise unenforceable for any reason, including but not limited to becoming barred by any statue of limitations.

2.        This is a continuing guaranty relating to any present and future indebtedness, including that arising under successive transactions which shall either continue the indebtedness or from time to time renew it. This Guaranty shall not apply to any indebtedness created more than two business days after the actual receipt by Hyundai Finance of written notice of its revocation as to future transactions; provided that such notice of revocation shall not be effective as to any guarantor who has failed to give such notice, and shall not release Guarantor from liabilities for payment of: (i) any and all indebtedness then in existence, (ii) any refinancings, renewals or extensions thereof, in whole or in part, whether such refinancings, renewals or extensions are made before or after such revocation or any revocation by operation of law, and (iii) any damages, losses, costs, interest, charges attorney's fees or expenses then or thereafter incurred in connection with such indebtedness or any refinancings, renewals or extensions thereof. Any payment by Guarantor shall not reduce the maximum obligation hereunder unless written notice to that effect is actually received by Hyundai Finance at or prior to the time of such payment. The obligations of Guarantor hereunder shall be in addition to any obligations of Guarantor under any other guaranties of the indebtedness of Dealership or any other persons heretofore given or hereafter to be given to Hyundai Finance unless such other guaranties are expressly modified or revoked in writing; and this Guaranty shall not, unless expressly herein provided, affect or invalidate any such other guaranties. The liability of Guarantor to Hyundai Finance shall at all times be the aggregate liability of Guarantor under the terms of this Guaranty and of any other guaranties given by Guarantor to Hyundai Finance and not expressly revoked, modified or invalidated.

3.        The obligation of Guarantor hereby created is joint and several, and Hyundai Finance is authorized and empowered to proceed against Guarantor without joining Dealership or any other guarantor or party. All of the parties may be sued together, or any of them may be sued separately without first or contemporaneously suing the others. There shall be no duty or obligation upon Hyundai Finance, whether by notice under any applicable statute or otherwise: (i) to proceed against Guarantor, Dealership or any other guarantor or party, (ii) to initiate any proceeding or exhaust any remedy against Guarantor, Dealership, or any other guarantor or party, or (iii) to give any notice to Guarantor, Dealership, or any other proceedings of any kind, against Dealership, Guarantor, or any of them. Guarantor agrees that any payment of any indebtedness or other act which shall toll any statute of limitations applicable to any proposed action against Dealership shall similarly operate to toll such statute of limitations as to Guarantor's liability hereunder.

4.        Guarantor agrees that Hyundai Finance may at any time, either with or without consideration, surrender, release or receive any property or other security of any kind or nature whatsoever held by it or any person on its behalf or for its account securing any indebtedness of Dealership, or any liability, or substitute any collateral so held by Hyundai Finance for other collateral of like kind, or of any kind, without notice to or further consent from guarantor, and such surrender, receipt, release or substitution shall not in any way affect the obligation of Guarantor hereunder. Hyundai Finance shall have full authority to adjust, compromise and receive less than the amount due upon any such collateral, and may enter into any accord and satisfaction agreement with respect to the same as may seem advisable to Hyundai Finance without affecting the obligation of Guarantor hereunder, which shall remain absolute, primary and unconditional. Hyundai Finance shall be under no duty to undertake to collect upon such collateral or any part thereof, and shall not be liable for any negligence or mistake in judgment in handling, disposing of, obtaining, failing to collect upon, or perfecting a security interest in, any such collateral. Hyundai Finance may collect or otherwise liquidate any collateral in any manner and bid and purchase at any sale without affecting or impairing the obligation of Guarantor hereunder.

5.  Guarantor agrees that, at any time or times, without notice to or further approval of Guarantor or Dealership, and without in any way affecting the obligation of Guarantor hereunder, Hyundai Finance may, with or without consideration: (i) release, compromise, or agree not to sue, in whole or in part, Dealership, or any other obligor, guarantor, endorser or surety upon any of the indebtedness; (ii) waive, rescind, renew, extend, modify, increase, decrease, delete, terminate, amend, or accelerate in accordance with its terms, either in whole or in part, any of the indebtedness, any of the terms thereof, or any agreement, covenant, condition, or obligation of or with Dealership, or any other obligor, guarantor, endorser or surety upon any of the liabilities; and (iii) apply any payment received from Dealership, or any other obligor, guarantor, endorser or surety upon any of the indebtedness to any indebtedness which Hyundai Finance may choose.

6.  Guarantor waives any right to require Hyundai Finance to proceed against Dealership, proceed against or exhaust any security held from Dealership, or pursue any other remedy in Hyundai Finance's power whatsoever. Guarantor waives any defense and cause of action or claim for relief arising by reason of the cessation, discharge or release from any cause whatsoever of the liability of Dealership, such a cause to include, but not be limited to, an act or omission by Hyundai Finance, or any election by Hyundai Finance to pursue or foreclose on certain security of Dealership (such as real property) non-judicially or judicially without first or contemporaneously pursuing or foreclosing on other security of Dealership. Guarantor shall remain liable even though Hyundai Finance may take action that releases or discharges Dealership or any other person from liability on the indebtedness and thereby impairs Guarantor's rights of subrogation or reimbursement against Dealership or such person; and guarantor specifically waives any protection or benefit that may be conferred upon Guarantor by any statutes regarding forms of action, deficiencies, and the enforcement of real property security interests. Until all indebtedness of Dealership to Hyundai Finance shall have been paid in full, even though such indebtedness is in excess of Guarantor's liability hereunder, Guarantor shall have no right of subrogation, and hereby waives any right to enforce any remedy which Hyundai Finance now has or may hereafter have against Dealership, and waives any benefit of, and any right to participate in, any security now or hereafter held by Hyundai Finance. Guarantor waives all presentments, demands for performance, notice of non-performance, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guaranty and of the existence, creation or incurring of new or additional indebtedness. Guarantor is fully aware of the financial condition of Dealership, and is executing and delivering this Guaranty at Dealership's request and based solely upon Guarantor's own independent investigation of all matters pertinent hereto and is not relying in any manner upon any representations or statements of Hyundai Finance with respect thereto. Guarantor represents and warrants that Guarantor is in a position to obtain, and Guarantor hereby assumes full responsibility for obtaining, any additional information concerning the financial condition of Dealership and any other matter pertinent hereto as Guarantor may desire, and Guarantor is not relying upon or expecting Hyundai Finance to furnish to Guarantor any information now or hereafter in Hyundai Finance's possession concerning the same or any other matter.

By executing this Guaranty, Guarantor knowingly accepts the full range of risks encompassed within a contract of continuing guaranty, which risks Guarantor acknowledges include without limitation the possibility that Dealership will incur additional indebtedness for which Guarantor will be liable hereunder after Dealership's financial condition or ability to pay such indebtedness has deteriorated and/or after bankruptcy or insolvency proceedings have been commenced by or against Dealership. Guarantor shall have no right to require Hyundai Finance to obtain or disclose any information with respect to the indebtedness, the financial condition or character of Dealership, the existence of any collateral or security for any or all of the indebtedness, the filing by or against Dealership of any bankruptcy or insolvency proceeding, the existence of any other guaranties of all or any part of the indebtedness, any action or non-action on the part of Hyundai Finance or any other person, or any other matter, fact or occurrence whatsoever.

Guarantor also hereby waives any claim, right or remedy which such Guarantor may now have or hereafter acquire against Dealership that arises hereunder and/or from the performance by any Guarantor hereunder including, without limitation, any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right or remedy of Hyundai Finance against Dealership or any security which Hyundai Finance now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise.

7.    In addition to all liens upon, and rights of setoff against, the moneys, securities or other property of Guarantor given to Hyundai Finance by law, Hyundai Finance shall have a lien upon and a right of setoff against all moneys, securities and other property of Guarantor now and hereafter in the possession of Hyundai Finance or any of its affiliate companies, whether held in a general or special account, or for safekeeping otherwise; and every such lien and right of setoff may be exercised without demand upon or notice to Guarantor. No lien or right of setoff shall be deemed to have been waived by any act or conduct on the part of Hyundai Finance, or by any neglect to exercise such right of setoff or to enforce such lien, or by any delay in so doing, and every right of setoff and lien shall continue in full force and effect until such right of setoff or lien is specifically waived or released by an instrument in writing executed by Hyundai Finance.

8.    Any indebtedness of Dealership now or hereafter held by Guarantor is hereby subordinated to the indebtedness of Dealership to Hyundai Finance; and such indebtedness of Dealership to Guarantor is assigned to Hyundai Finance as security for this Guaranty and the indebtedness, and if Hyundai Finance so requests shall be collected, enforced and received by Guarantor as trustee for Hyundai Finance to be paid over to Hyundai Finance on account of the indebtedness of Dealership to Hyundai Finance but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.

9.    Guarantor shall furnish to Hyundai Finance such financial or other statements respecting the condition, operation and affairs of Guarantor or Guarantor's property as Hyundai Finance may from time to time reasonably require. Guarantor shall in any event furnish Hyundai Finance with such financial statements no less frequently than annually.

10.    It is not necessary for Hyundai Finance to inquire into the powers of Dealership or the officers, directors, or agents acting or purporting to act in its behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed hereunder.

11.    In the event that any action or proceeding is commenced by Hyundai Finance to enforce the terms and provisions of this Guaranty, Hyundai Finance shall receive from Guarantor all of its costs and expenses incurred in connection with such action or proceeding including its reasonable attorneys' fees and court costs. Each party hereby waives trial by jury in any such action or proceeding.

12.    All of Hyundai Finance's rights and remedies are cumulative and those granted hereunder are in addition to any rights and remedies available to Hyundai Finance under law. If any provision of this Guaranty or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Guaranty or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby, and each provision of this Guaranty shall be valid and enforceable to the full extent permitted by law. The failure or forbearance of Hyundai Finance to exercise any right hereunder or otherwise granted to it by law or another agreement shall not affect the obligations of Guarantor hereunder and shall not constitute a waiver of such right. This Guaranty contains the entire agreement between the parties, and no provision hereof may be waived, modified, or altered except by a writing executed by Guarantor and Hyundai Finance.

13.    This Guaranty shall be governed by and construed in accordance with the laws of the state where the Dealership is located.

IN WITNESS WHEREOF the undersigned Guarantor has executed this Guaranty and affixed his signature this
_1st_ day of _August_, 2007

Guarantor:    Edmond Geula

Signature:

Name Printed:    Edmond Geula

Address:_____

_____

State of _NY_    )
                )  ss.
County of _Queens_    )

On _Aug 1st_, before me, _Howard Milbauer_, Notary Public, personally appeared, _Edmond Guela_
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the
within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature
on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public
HOWARD MILBAUER
Notary Public, State of New York
No. 01MI2694010
Qualified in Queens County
Commission Expires Aug. 31, 2008

**CONTINUING GUARANTY AND SUBORDINATION AGREEMENT ("Guaranty")**

TO:     HYUNDAI MOTOR FINANCE COMPANY

1.          For valuable consideration, the receipt of which is hereby acknowledged, the undersigned, Saeid Tehrani (hereinafter referred to as "Guarantor") unconditionally guarantees and promises to pay to Hyundai Motor Finance Company (hereinafter referred to as "Hyundai Finance"), or order, on demand in lawful money of the United States, any and all present and future indebtedness of Falcon Motors, Inc., a New York corporation, hereinafter referred to as ("Dealership") to Hyundai Finance.

The word "indebtedness" is used herein in its most comprehensive sense and includes any and all present and future advances, debts, obligations and liabilities of Dealership, now and hereafter made, incurred or created, whether or not accelerated and however arising, whether liquidated or unliquidated, determined or undetermined, and whether Dealership may be liable individually or jointly with others, or whether such indebtedness may be or hereafter become otherwise unenforceable for any reason, including but not limited to becoming barred by any statue of limitations.

2.          This is a continuing guaranty relating to any present and future indebtedness, including that arising under successive transactions which shall either continue the indebtedness or from time to time renew it. This Guaranty shall not apply to any indebtedness created more than two business days after the actual receipt by Hyundai Finance of written notice of its revocation as to future transactions; provided that such notice of revocation shall not be effective as to any guarantor who has failed to give such notice, and shall not release Guarantor from liabilities for payment of: (i) any and all indebtedness then in existence, (ii) any refinancings, renewals or extensions thereof, in whole or in part, whether such refinancings, renewals or extensions are made before or after such revocation or any revocation by operation of law, and (iii) any damages, losses, costs, interest, charges attorney's fees or expenses then or thereafter incurred in connection with such indebtedness or any refinancings, renewals or extensions thereof.  Any payment by Guarantor shall not reduce the maximum obligation hereunder unless written notice to that effect is actually received by Hyundai Finance at or prior to the time of such payment.  The obligations of Guarantor hereunder shall be in addition to any obligations of Guarantor under any other guaranties of the indebtedness of Dealership or any other persons heretofore given or hereafter to be given to Hyundai Finance unless such other guaranties are expressly modified or revoked in writing; and this Guaranty shall not, unless expressly herein provided, affect or invalidate any such other guaranties.  The liability of Guarantor to Hyundai Finance shall at all times be the aggregate liability of Guarantor under the terms of this Guaranty and of any other guaranties given by Guarantor to Hyundai Finance and not expressly revoked, modified or invalidated.

3.          The obligation of Guarantor hereby created is joint and several, and Hyundai Finance is authorized and empowered to proceed against Guarantor without joining Dealership or any other guarantor or party.  All of the parties may be sued together, or any of them may be sued separately without first or contemporaneously suing the others. There shall be no duty or obligation upon Hyundai Finance, whether by notice under any applicable statute or otherwise: (i) to proceed against Guarantor, Dealership or any other guarantor or party, (ii) to initiate any proceeding or exhaust any remedy against Guarantor, Dealership, or any other guarantor or party, or (iii) to give any notice to Guarantor, Dealership, or any other proceedings of any kind, against Dealership, Guarantor, or any of them.  Guarantor agrees that any payment of any indebtedness or other act which shall toll any statute of limitations applicable to any proposed action against Dealership shall similarly operate to toll such statute of limitations as to Guarantor's liability hereunder.

4.          Guarantor agrees that Hyundai Finance may at any time, either with or without consideration, surrender, release or receive any property or other security of any kind or nature whatsoever held by it or any person on its behalf or for its account securing any indebtedness of Dealership, or any liability, or substitute any collateral so held by Hyundai Finance for other collateral of like kind, or of any kind, without notice to or further consent from guarantor, and such surrender, receipt, release or substitution shall not in any way affect the obligation of Guarantor hereunder.  Hyundai Finance shall have full authority to adjust, compromise and receive less than the amount due upon any such collateral, and may enter into any accord and satisfaction agreement with respect to the same as may seem advisable to Hyundai Finance without affecting the obligation of Guarantor hereunder, which shall remain absolute, primary and unconditional.  Hyundai Finance shall be under no duty to undertake to collect upon such collateral or any part thereof, and shall not be liable for any negligence or mistake in judgment in handling, disposing of, obtaining, failing to collect upon, or perfecting a security interest in, any such collateral. Hyundai Finance may collect or otherwise liquidate any collateral in any manner and bid and purchase at any sale without affecting or impairing the obligation of Guarantor hereunder.

5.    Guarantor agrees that, at any time or times, without notice to or further approval of Guarantor or Dealership, and without in any way affecting the obligation of Guarantor hereunder, Hyundai Finance may, with or without consideration: (i) release, compromise, or agree not to sue, in whole or in part, Dealership, or any other obligor, guarantor, endorser or surety upon any of the indebtedness; (ii) waive, rescind, renew, extend, modify, increase, decrease, delete, terminate, amend, or accelerate in accordance with its terms, either in whole or in part, any of the indebtedness, any of the terms thereof, or any agreement, covenant, condition, or obligation of or with Dealership, or any other obligor, guarantor, endorser or surety upon any of the liabilities; and (iii) apply any payment received from Dealership, or any other obligor, guarantor, endorser or surety upon any of the indebtedness to any indebtedness which Hyundai Finance may choose.

6.    Guarantor waives any right to require Hyundai Finance to proceed against Dealership, proceed against or exhaust any security held from Dealership, or pursue any other remedy in Hyundai Finance's power whatsoever. Guarantor waives any defense and cause of action or claim for relief arising by reason of the cessation, discharge or release from any cause whatsoever of the liability of Dealership, such a cause to include, but not be limited to, an act or omission by Hyundai Finance, or any election by Hyundai Finance to pursue or foreclose on certain security of Dealership (such as real property) non-judicially or judicially without first or contemporaneously pursuing or foreclosing on other security of Dealership. Guarantor shall remain liable even though Hyundai Finance may take action that releases or discharges Dealership or any other person from liability on the indebtedness and thereby impairs Guarantor's rights of subrogation or reimbursement against Dealership or such person; and guarantor specifically waives any protection or benefit that may be conferred upon Guarantor by any statutes regarding forms of action, deficiencies, and the enforcement of real property security interests. Until all indebtedness of Dealership to Hyundai Finance shall have been paid in full, even though such indebtedness is in excess of Guarantor's liability hereunder, Guarantor shall have no right of subrogation, and hereby waives any right to enforce any remedy which Hyundai Finance now has or may hereafter have against Dealership, and waives any benefit of, and any right to participate in, any security now or hereafter held by Hyundai Finance. Guarantor waives all presentments, demands for performance, notice of non-performance, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guaranty and of the existence, creation or incurring of new or additional indebtedness. Guarantor is fully aware of the financial condition of Dealership, and is executing and delivering this Guaranty at Dealership's request and based solely upon Guarantor's own independent investigation of all matters pertinent hereto and is not relying in any manner upon any representations or statements of Hyundai Finance with respect thereto. Guarantor represents and warrants that Guarantor is in a position to obtain, and Guarantor hereby assumes full responsibility for obtaining, any additional information concerning the financial condition of Dealership and any other matter pertinent hereto as Guarantor may desire, and Guarantor is not relying upon or expecting Hyundai Finance to furnish to Guarantor any information now or hereafter in Hyundai Finance's possession concerning the same or any other matter.

By executing this Guaranty, Guarantor knowingly accepts the full range of risks encompassed within a contract of continuing guaranty, which risks Guarantor acknowledges include without limitation the possibility that Dealership will incur additional indebtedness for which Guarantor will be liable hereunder after Dealership's financial condition or ability to pay such indebtedness has deteriorated and/or after bankruptcy or insolvency proceedings have been commenced by or against Dealership. Guarantor shall have no right to require Hyundai Finance to obtain or disclose any information with respect to the indebtedness, the financial condition or character of Dealership, the existence of any collateral or security for any or all of the indebtedness, the filing by or against Dealership of any bankruptcy or insolvency proceeding, the existence of any other guaranties of all or any part of the indebtedness, any action or non-action on the part of Hyundai Finance or any other person, or any other matter, fact or occurrence whatsoever.

Guarantor also hereby waives any claim, right or remedy which such Guarantor may now have or hereafter acquire against Dealership that arises hereunder and/or from the performance by any Guarantor hereunder including, without limitation, any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right or remedy of Hyundai Finance against Dealership or any security which Hyundai Finance now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise.

7.   In addition to all liens upon, and rights of setoff against, the moneys, securities or other property of Guarantor given to Hyundai Finance by law, Hyundai Finance shall have a lien upon and a right of setoff against all moneys, securities and other property of Guarantor now and hereafter in the possession of Hyundai Finance or any of its affiliate companies, whether held in a general or special account, or for safekeeping otherwise; and every such lien and right of setoff may be exercised without demand upon or notice to Guarantor. No lien or right of setoff shall be deemed to have been waived by any act or conduct on the part of Hyundai Finance, or by any neglect to exercise such right of setoff or to enforce such lien, or by any delay in so doing, and every right of setoff and lien shall continue in full force and effect until such right of setoff or lien is specifically waived or released by an instrument in writing executed by Hyundai Finance.

8.   Any indebtedness of Dealership now or hereafter held by Guarantor is hereby subordinated to the indebtedness of Dealership to Hyundai Finance; and such indebtedness of Dealership to Guarantor is assigned to Hyundai Finance as security for this Guaranty and the indebtedness, and if Hyundai Finance so requests shall be collected, enforced and received by Guarantor as trustee for Hyundai Finance to be paid over to Hyundai Finance on account of the indebtedness of Dealership to Hyundai Finance but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.

9.   Guarantor shall furnish to Hyundai Finance such financial or other statements respecting the condition, operation and affairs of Guarantor or Guarantor's property as Hyundai Finance may from time to time reasonably require. Guarantor shall in any event furnish Hyundai Finance with such financial statements no less frequently than annually.

10.   It is not necessary for Hyundai Finance to inquire into the powers of Dealership or the officers, directors, or agents acting or purporting to act in its behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed hereunder.

11.   In the event that any action or proceeding is commenced by Hyundai Finance to enforce the terms and provisions of this Guaranty, Hyundai Finance shall receive from Guarantor all of its costs and expenses incurred in connection with such action or proceeding including its reasonable attorneys' fees and court costs. Each party hereby waives trial by jury in any such action or proceeding.

12.   All of Hyundai Finance's rights and remedies are cumulative and those granted hereunder are in addition to any rights and remedies available to Hyundai Finance under law. If any provision of this Guaranty or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Guaranty or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby, and each provision of this Guaranty shall be valid and enforceable to the full extent permitted by law. The failure or forbearance of Hyundai Finance to exercise any right hereunder or otherwise granted to it by law or another agreement shall not affect the obligations of Guarantor hereunder and shall not constitute a waiver of such right. This Guaranty contains the entire agreement between the parties, and no provision hereof may be waived, modified, or altered except by a writing executed by Guarantor and Hyundai Finance.

13.   This Guaranty shall be governed by and construed in accordance with the laws of the state where the Dealership is located.

IN WITNESS WHEREOF the undersigned Guarantor has executed this Guaranty and affixed his signature this *1st* day of _Aug_, 2007

Guarantor:    Saeid Tehrani

Signature: _____

Name Printed:    Saeid Tehrani    *S. TEHRANI*

Address: _785 Bryant Ave_
_Roslyn Harbor, NY 11576_


State of _NY_ )
                    ) ss.
County of _Queens_ )

On _Aug 1st_, before me _Howard Milbauer_, Notary Public, personally appeared, _Saeid Tehrani_ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

HOWARD MILBAUER
Notary Public, State of New York
No. 01MI2694010
Qualified in Queens County
Commission Expires Aug. 31, 2008

**CONTINUING GUARANTY AND SUBORDINATION AGREEMENT ("Guaranty")**

TO:    HYUNDAI MOTOR FINANCE COMPANY

1.        For valuable consideration, the receipt of which is hereby acknowledged, the undersigned, Ariel Tehrani (hereinafter referred to as "Guarantor") unconditionally guarantees and promises to pay to Hyundai Motor Finance Company (hereinafter referred to as "Hyundai Finance"), or order, on demand in lawful money of the United States, any and all present and future indebtedness of Falcon Motors, Inc., a New York corporation, hereinafter referred to as ("Dealership") to Hyundai Finance.

The word "indebtedness" is used herein in its most comprehensive sense and includes any and all present and future advances, debts, obligations and liabilities of Dealership, now and hereafter made, incurred or created, whether or not accelerated and however arising, whether liquidated or unliquidated, determined or undetermined, and whether Dealership may be liable individually or jointly with others, or whether such indebtedness may be or hereafter become otherwise unenforceable for any reason, including but not limited to becoming barred by any statue of limitations.

2.        This is a continuing guaranty relating to any present and future indebtedness, including that arising under successive transactions which shall either continue the indebtedness or from time to time renew it. This Guaranty shall not apply to any indebtedness created more than two business days after the actual receipt by Hyundai Finance of written notice of its revocation as to future transactions; provided that such notice of revocation shall not be effective as to any guarantor who has failed to give such notice, and shall not release Guarantor from liabilities for payment of: (i) any and all indebtedness then in existence, (ii) any refinancings, renewals or extensions thereof, in whole or in part, whether such refinancings, renewals or extensions are made before or after such revocation or any revocation by operation of law, and (iii) any damages, losses, costs, interest, charges attorney's fees or expenses then or thereafter incurred in connection with such indebtedness or any refinancings, renewals or extensions thereof. Any payment by Guarantor shall not reduce the maximum obligation hereunder unless written notice to that effect is actually received by Hyundai Finance at or prior to the time of such payment. The obligations of Guarantor hereunder shall be in addition to any obligations of Guarantor under any other guaranties of the indebtedness of Dealership or any other persons heretofore given or hereafter to be given to Hyundai Finance unless such other guaranties are expressly modified or revoked in writing; and this Guaranty shall not, unless expressly herein provided, affect or invalidate any such other guaranties. The liability of Guarantor to Hyundai Finance shall at all times be the aggregate liability of Guarantor under the terms of this Guaranty and of any other guaranties given by Guarantor to Hyundai Finance and not expressly revoked, modified or invalidated.

3.        The obligation of Guarantor hereby created is joint and several, and Hyundai Finance is authorized and empowered to proceed against Guarantor without joining Dealership or any other guarantor or party. All of the parties may be sued together, or any of them may be sued separately without first or contemporaneously suing the others. There shall be no duty or obligation upon Hyundai Finance, whether by notice under any applicable statute or otherwise: (i) to proceed against Guarantor, Dealership or any other guarantor or party, (ii) to intiate any proceeding or exhaust any remedy against Guarantor, Dealership, or any other guarantor or party, or (iii) to give any notice to Guarantor, Dealership, or any other proceedings of any kind, against Dealership, Guarantor, or any of them. Guarantor agrees that any payment of any indebtedness or other act which shall toll any statute of limitations applicable to any proposed action against Dealership shall similarly operate to toll such statute of limitations as to Guarantor's liability hereunder.

4.        Guarantor agrees that Hyundai Finance may at any time, either with or without consideration, surrender, release or receive any property or other security of any kind or nature whatsoever held by it or any person on its behalf or for its account securing any indebtedness of Dealership, or any liability, or substitute any collateral so held by Hyundai Finance for other collateral of like kind, or of any kind, without notice to or further consent from guarantor, and such surrender, receipt, release or substitution shall not in any way affect the obligation of Guarantor hereunder. Hyundai Finance shall have full authority to adjust, compromise and receive less than the amount due upon any such collateral, and may enter into any accord and satisfaction agreement with respect to the same as may seem advisable to Hyundai Finance without affecting the obligation of Guarantor hereunder, which shall remain absolute, primary and unconditional. Hyundai Finance shall be under no duty to undertake to collect upon such collateral or any part thereof, and shall not be liable for any negligence or mistake in judgment in handling, disposing of, obtaining, failing to collect upon, or perfecting a security interest in, any such collateral. Hyundai Finance may collect or otherwise liquidate any collateral in any manner and bid and purchase at any sale without affecting or impairing the obligation of Guarantor hereunder.

5.   Guarantor agrees that, at any time or times, without notice to or further approval of Guarantor or Dealership, and without in any way affecting the obligation of Guarantor hereunder, Hyundai Finance may, with or without consideration: (i) release, compromise, or agree not to sue, in whole or in part, Dealership, or any other obligor, guarantor, endorser or surety upon any of the indebtedness; (ii) waive, rescind, renew, extend, modify, increase, decrease, delete, terminate, amend, or accelerate in accordance with its terms, either in whole or in part, any of the indebtedness, any of the terms thereof, or any agreement, covenant, condition, or obligation of or with Dealership, or any other obligor, guarantor, endorser or surety upon any of the liabilities; and (iii) apply any payment received from Dealership, or any other obligor, guarantor, endorser or surety upon any of the indebtedness to any indebtedness which Hyundai Finance may choose.

6.   Guarantor waives any right to require Hyundai Finance to proceed against Dealership, proceed against or exhaust any security held from Dealership, or pursue any other remedy in Hyundai Finance's power whatsoever. Guarantor waives any defense and cause of action or claim for relief arising by reason of the cessation, discharge or release from any cause whatsoever of the liability of Dealership, such a cause to include, but not be limited to, an act or omission by Hyundai Finance, or any election by Hyundai Finance to pursue or foreclose on certain security of Dealership (such as real property) non-judicially or judicially without first or contemporaneously pursuing or foreclosing on other security of Dealership. Guarantor shall remain liable even though Hyundai Finance may take action that releases or discharges Dealership or any other person from liability on the indebtedness and thereby impairs Guarantor's rights of subrogation or reimbursement against Dealership or such person; and guarantor specifically waives any protection or benefit that may be conferred upon Guarantor by any statutes regarding forms of action, deficiencies, and the enforcement of real property security interests. Until all indebtedness of Dealership to Hyundai Finance shall have been paid in full, even though such indebtedness is in excess of Guarantor's liability hereunder, Guarantor shall have no right of subrogation, and hereby waives any right to enforce any remedy which Hyundai Finance now has or may hereafter have against Dealership, and waives any benefit of, and any right to participate in, any security now or hereafter held by Hyundai Finance. Guarantor waives all presentments, demands for performance, notice of non-performance, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guaranty and of the existence, creation or incurring of new or additional indebtedness. Guarantor is fully aware of the financial condition of Dealership, and is executing and delivering this Guaranty at Dealership's request and based solely upon Guarantor's own independent investigation of all matters pertinent hereto and is not relying in any manner upon any representations or statements of Hyundai Finance with respect thereto. Guarantor represents and warrants that Guarantor is in a position to obtain, and Guarantor hereby assumes full responsibility for obtaining, any additional information concerning the financial condition of Dealership and any other matter pertinent hereto as Guarantor may desire, and Guarantor is not relying upon or expecting Hyundai Finance to furnish to Guarantor any information now or hereafter in Hyundai Finance's possession concerning the same or any other matter.

By executing this Guaranty, Guarantor knowingly accepts the full range of risks encompassed within a contract of continuing guaranty, which risks Guarantor acknowledges include without limitation the possibility that Dealership will incur additional indebtedness for which Guarantor will be liable hereunder after Dealership's financial condition or ability to pay such indebtedness has deteriorated and/or after bankruptcy or insolvency proceedings have been commenced by or against Dealership. Guarantor shall have no right to require Hyundai Finance to obtain or disclose any information with respect to the indebtedness, the financial condition or character of Dealership, the existence of any collateral or security for any or all of the indebtedness, the filing by or against Dealership of any bankruptcy or insolvency proceeding, the existence of any other guaranties of all or any part of the indebtedness, any action or non-action on the part of Hyundai Finance or any other person, or any other matter, fact or occurrence whatsoever.

Guarantor also hereby waives any claim, right or remedy which such Guarantor may now have or hereafter acquire against Dealership that arises hereunder and/or from the performance by any Guarantor hereunder including, without limitation, any claim, remedy or right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim, right or remedy of Hyundai Finance against Dealership or any security which Hyundai Finance now has or hereafter acquires, whether or not such claim, right or remedy arises in equity, under contract, by statute, under common law or otherwise.

7.  In addition to all liens upon, and rights of setoff against, the moneys, securities or other property of Guarantor given to Hyundai Finance by law, Hyundai Finance shall have a lien upon and a right of setoff against all moneys, securities and other property of Guarantor now and hereafter in the possession of Hyundai Finance or any of its affiliate companies, whether held in a general or special account, or for safekeeping otherwise; and every such lien and right of setoff may be exercised without demand upon or notice to Guarantor.  No lien or right of setoff shall be deemed to have been waived by any act or conduct on the part of Hyundai Finance, or by any neglect to exercise such right of setoff or to enforce such lien, or by any delay in so doing, and every right of setoff and lien shall continue in full force and effect until such right of setoff or lien is specifically waived or released by an instrument in writing executed by Hyundai Finance.

8.  Any indebtedness of Dealership now or hereafter held by Guarantor is hereby subordinated to the indebtedness of Dealership to Hyundai Finance; and such indebtedness of Dealership to Guarantor is assigned to Hyundai Finance as security for this Guaranty and the indebtedness, and if Hyundai Finance so requests shall be collected, enforced and received by Guarantor as trustee for Hyundai Finance to be paid over to Hyundai Finance on account of the indebtedness of Dealership to Hyundai Finance but without reducing or affecting in any manner the liability of Guarantor under the other provisions of this Guaranty.

9.  Guarantor shall furnish to Hyundai Finance such financial or other statements respecting the condition, operation and affairs of Guarantor or Guarantor's property as Hyundai Finance may from time to time reasonably require.  Guarantor shall in any event furnish Hyundai Finance with such financial statements no less frequently than annually.

10.  It is not necessary for Hyundai Finance to inquire into the powers of Dealership or the officers, directors, or agents acting or purporting to act in its behalf, and any indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed hereunder.

11.  In the event that any action or proceeding is commenced by Hyundai Finance to enforce the terms and provisions of this Guaranty, Hyundai Finance shall receive from Guarantor all of its costs and expenses incurred in connection with such action or proceeding including its reasonable attorneys' fees and court costs.  Each party hereby waives trial by jury in any such action or proceeding.

12.  All of Hyundai Finance's rights and remedies are cumulative and those granted hereunder are in addition to any rights and remedies available to Hyundai Finance under law.  If any provision of this Guaranty or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Guaranty or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby, and each provision of this Guaranty shall be valid and enforceable to the full extent permitted by law.  The failure or forbearance of Hyundai Finance to exercise any right hereunder or otherwise granted to it by law or another agreement shall not affect the obligations of Guarantor hereunder and shall not constitute a waiver of such right.  This Guaranty contains the entire agreement between the parties, and no provision hereof may be waived, modified, or altered except by a writing executed by Guarantor and Hyundai Finance.

13.  This Guaranty shall be governed by and construed in accordance with the laws of the state where the Dealership is located.

IN WITNESS WHEREOF the undersigned Guarantor has executed this Guaranty and affixed his signature this **1st** day of _August_ , 2007

Guarantor:    Ariel Tehrani

Signature:

Name Printed:    Ariel Tehrani

Address:    530 E 76 th St.

_____

State of _NY_ )
County of _Queens_ ) ss.

On _Aug 1st_ , before me, _Howard Milbauer_, Notary Public, personally appeared, _Ariel Tehrani_ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Public

HOWARD MILBAUER
Notary Public, State of New York
No. 01MI2694010
Qualified in Queens County
Commission Expires Aug. 31, 2008